FILED

OCT - 9 2001

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SCOTT M. BOWCOCK,

    Petitioner,               No. CIV-S-99-1085 WBS DAD P

    vs.

GLEN A. MUELLAR, et al.,

    Respondents.          FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges a 1996 conviction entered by the Sacramento County Superior Court following a jury trial. Petitioner seeks relief on the following grounds: (1) denial of the due process right to a fair trial; (2) denial of the effective assistance of counsel; (3) prejudice caused by prosecutorial misconduct; and (4) conviction obtained by perjured testimony.

        Upon careful consideration of the briefs on file and the entire record, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

## PROCEDURAL HISTORY

        On February 7, 1996, petitioner was found guilty of attempted murder in violation of California Penal Code § 187 and assault with a deadly weapon in violation of California Penal

1

Code § 245(a)(1). (Pet. at 1; Answer at 1-2.) On March 8, 1996, petitioner was sentenced to a prison term of eleven years. (Id.)

On direct appeal, petitioner's convictions were affirmed by the California Court of Appeal, Third Appellate District, on April 3, 1997. (Pet. at 1-2; Answer at 2.) Petitioner sought habeas corpus relief from the Superior Court, the Court of Appeal, and the California Supreme Court. (Pet. at 2-3 & Exs.) Petitioner exhausted his federal claims by presenting them to the California Supreme Court in a habeas corpus petition filed on December 29, 1997, which was denied on June 24, 1998, and a habeas corpus petition filed on August 10, 1998, which was denied on February 24, 1999. (Pet. at 2 & Exs. B & C; Answer at 2.)

Petitioner filed his federal petition for writ of habeas corpus on June 2, 1999. On August 10, 1999, respondents were directed to file a response to the petition. On September 9, 1999, respondents filed their answer and lodged the relevant state court records. Petitioner filed his traverse on September 24, 1999.

## FACTUAL BACKGROUND

As background, the court sets forth the statement of facts contained in the unpublished opinion of the California Court of Appeal, Third Appellate District, in its discussion of petitioner's claim that the evidence at trial was insufficient to show an intent to kill.

> On the afternoon of December 19, 1994, [petitioner] used his mother's credit card to rent a room at the Holiday Inn for Jeff Stone as compensation for Stone's work on [petitioner's] mother's mobile home. When [petitioner] returned to the hotel later that evening, he discovered that an additional room and room service expenses had been charged to his mother's credit card. [Petitioner] became angry.
>
> Douglas Hughes was in one of the rented hotel rooms at Stone's invitation (Stone's girlfriend, Judy Daniels, is Hughes' sister). [Petitioner] and Hughes got into a disagreement about a woman named Elisa, whom Hughes wanted to invite "to party." Threats were exchanged.
>
> Hughes testified that [petitioner] lunged at him while Hughes was lying on a couch. [Petitioner] stabbed Hughes with a knife under the left arm, in the left back, and in the left lung.

2

Hughes was not armed. After the stabbing, [petitioner] ran from the room and Hughes said: "Why don't you come back and fight me like a man?"

[Petitioner] saw the incident a bit differently. After hurling a few epithets [petitioner's] way, Hughes hurled himself at [petitioner], swinging something shiny like a knife. [Petitioner] raised his hands in defense, and one of them was slashed. Fearing for his life, [petitioner] reached for the "tool" he carried to open paint cans at work (a double-bladed knife); he "jabbed a couple times to keep [Hughes] away . . . ." Then [petitioner] seized an opportunity to get away and ran from the room.

Judy Daniels, Hughes' sister, testified that [petitioner] told Hughes he could "take care of the problem" regarding Elisa if Hughes did not stop. Hughes replied, "if you want to do something, then do it." [Petitioner] then leaped at Hughes, stabbing him.

After the stabbing, [petitioner] approached Lewis Keola in a parking lot near the Holiday Inn and asked for a ride. [Petitioner's] hand was bleeding. He told Keola that he had cut it on a broken beer bottle. Keola declined to give [petitioner] a ride but directed him to a telephone at a nearby business.

Daniel Calvert was at that business when [petitioner] asked to use the phone. [Petitioner] told Calvert that he had cut his hand when he tried to break into his own locked car. After [petitioner] got off the phone, police arrived and arrested him. Upon arrest, [petitioner] said that officers had cut his hand. Meanwhile, back at the hotel, police officers had discovered [petitioner's] bloody knife underneath a stairwell.

Hughes incurred three stab wounds: one in his left armpit (about nipple level), another in his left back (about the same level), and the third to his left arm. He spent 15 days in the hospital, and lost the use of his left hand because of two severed nerves. He lost between 30 and 40 percent of his total blood volume. The paramedic first on the scene did not think Hughes was "going to make it," given the loss of blood, the level of shock and the fact that none of the wounds was minor. The treating doctor stated that the injuries "were definitely life-threatening," that Hughes had experienced severe shock and blood loss, and that he was in "sort of a pre-arrest situation."

The evidence shows that [petitioner] was angry about the room charges and Hughes' focus on Elisa. Threats were exchanged between [petitioner] and Hughes. The testimony differed on who was the aggressor, but this was an issue for the jury to resolve, not this court. Suffice it to say, there was substantial evidence that [petitioner] was the aggressor.

3

> [Petitioner] inflicted three serious stab wounds, which threatened
> Hughes' life. These stab wounds were near the heart and resulted
> in Hughes losing around 40 percent of his blood volume. These
> wounds also necessitated a 15-day stay in the hospital, and resulted
> in Hughes losing the use of his left arm. Immediately after the
> assault, [petitioner] ran from the scene and apparently tried to
> discard his weapon (he maintained he simply dropped it while
> holding onto the stairwell handrail). During this departure,
> [petitioner] told Keola, Calvert, and arresting officers three
> different stories on how he had cut his hand. This evidence is
> sufficient to support a finding of an intent to kill.

(Op. of California Court of Appeal, Third Appellate District, filed Apr. 3, 1997, in case No. 3 Crim. C023668, at 2-5.)

## PETITIONER'S CLAIMS

Petitioner alleges four grounds for relief in his form petition. Petitioner has not set forth a brief summary of supporting facts for each claim but instead refers to attached exhibits.

In his first and second grounds for relief, petitioner alleges that he was "denied due process right to a fair trial" and "denied effective assistance of counsel." For these two claims, petitioner refers to Exhibits B and C for supporting cases and facts. For his third and fourth claims, by which he alleges that he was prejudiced by prosecutorial misconduct and that his conviction was a result of perjured trial testimony, petitioner refers to Exhibit C.[1]

Petitioner's Exhibit B commences with a motion for appointment of counsel and a petition for writ of habeas corpus filed in the California Supreme Court on December 29, 1997. In that habeas petition, petitioner states a single ground for relief in which he alleges he was denied his due process right to a fair trial and effective assistance of counsel. Petitioner does not set forth supporting facts but refers to an attached ten-page statement of facts, twenty-five pages of "original exhibits," a nine-page statement of the case, and a copy of a two-page order. The

---

[1] Petitioner's Exhibit A is a copy of Appellant's Opening Brief filed in the Court of Appeal, Third Appellate District. Petitioner appears to have offered this exhibit to support his allegations concerning exhaustion of remedies. (See Pet. at 2 (citing Ex. A regarding claims raised in California Supreme Court).)

4

undersigned has reviewed the nine-page statement of the case and the ten-page statement of facts and has relied on these statements as a source of the specific allegations and supporting facts relevant to petitioner's first and second federal claims. Those allegations and facts are set forth in the court's analysis below.

Petitioner's Exhibit C commences with a petition for writ of habeas corpus filed in the California Supreme Court on August 10, 1998. In this pleading petitioner again states a single ground for relief in which he combines all four of his federal claims, i.e., denial of due process right to a fair trial, denial of effective assistance of counsel, prejudice caused by prosecutorial misconduct, and conviction resulting from the introduction of perjured testimony. Petitioner does not set forth supporting facts on the form but refers to an attached "Petitioners Statement of the Facts and Case" and attached exhibits. The undersigned has reviewed petitioner's seventeen-page statement of facts as a source of the specific allegations and supporting facts for all four of petitioner's federal claims. Those allegations and facts are set forth in the court's analysis below.

## STANDARDS OF REVIEW

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. Engle v. Isaac, 456 U.S. 107, 119 (1982); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985). A federal writ is not available for alleged error in the interpretation or application of state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).

Section 2254 as amended in 1996[2] sets forth the following standards of review to be applied by federal courts to state court decisions:

/////

---

[2] Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 are applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2). See Williams v. Taylor, 529 U.S. 362 (2000); Torres v. Prunty, 223 F.3d 1103 (9th Cir. 2000); Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir.), cert. denied, 531 U.S. 944 (2000).

## ANALYSIS

### I. Due Process Right to Fair Trial and Effective Assistance of Counsel

In one of his state habeas petitions, petitioner explains that his petition contains claims not raised on direct appeal because he only recently learned of "the psychiatric reports omission" and that the omission is relevant to "the denial of due process through ineffective assistance of counsel." (Pet., Ex. B, Pet. filed in California Supreme Court on Dec. 29, 1997, at 5.) Similarly, in other state habeas petitions, petitioner pairs his due process and assistance-of-counsel allegations as a single claim and uses the phrase "denial of due process through ineffective assistance of counsel." Petitioner has not alleged a due process claim separate from his assistance-of-counsel claim.

Petitioner alleges that he received ineffective assistance of counsel from the public defender initially appointed to represent him and from the attorney petitioner retained more than four months after the public defender was released due to a conflict. Petitioner alleges that the public defender failed to obtain past psychiatric records, failed to forward her complete file and notes to petitioner's retained attorney, and failed to inform petitioner, after her representation of

petitioner ended, that a follow-up appointment had been scheduled with a court-appointed doctor. Petitioner states that both the public defender and retained counsel "became totally convinced that a self-defense position was the only viable defense, and refused to pursue, prepare or present psychiatric evidence or psychiatric expert testimony, which was clearly a viable defense." Petitioner trusted counsel to pursue, prepare, and present all relevant evidence in his defense, but both attorneys chose to present only a self-defense strategy and to exclude petitioner's psychiatric history and condition, thereby precluding a fair trial. Petitioner contends that the public defender should have obtained his psychiatric records, presented a psychiatric defense at the preliminary examination, and entered a plea of not guilty by reason of insanity ("NGRI"). (Pet., Ex. B, Appellant's Statement of the Case at 2-4.)

Petitioner indicates that the public defender received and listened to a phone message from a court-appointed doctor concerning the doctor's initial observations of petitioner and that counsel recorded her conclusion that petitioner was "Not NGRI, nor 1368." (Id. at 3.) Petitioner argues that this note was not based on a final report, was made before results were obtained from an extensive battery of tests he was given, and was only counsel's interpretation of a brief message. Petitioner believes, however, that this note would have put his new attorney on notice of a viable psychiatric defense, had the public defender forwarded the note to new counsel. (Id. at 4.) Petitioner accuses the public defender of intentionally preventing preparation of a final report by the court-appointed doctor, failing to inform petitioner that a follow-up appointment had been planned, and holding back psychiatric information from petitioner's new attorney due to the public defender's prior representation of the alleged victim. (Id.)

With regard to retained counsel, petitioner refers to counsel's "heart felt belief that [petitioner] acted in self-defense" and asserts that the belief "tainted" counsel's choice of defenses and precluded the psychiatric defense petitioner would have preferred. (Id.) Petitioner states that counsel did not heed the efforts of petitioner and his family and friends to persuade counsel to investigate petitioner's psychiatric records and build a defense based on petitioner's

7

history of psychotic episodes and panic attacks and the onset of diabetes, which aggravated pre-existing psychological problems. (Id. at 5.) Petitioner claims that numerous family and expert witnesses were available and that their testimony would have led to a more favorable outcome at trial. (Id.) Petitioner also objects to the fact that, when the prosecution moved to exclude petitioner's psychiatric history at trial, defense counsel not only failed to object but agreed. (Id.) Petitioner suggests that his mother could have testified to his mental problems, that the arresting officer could have testified that petitioner was disoriented and hallucinating at the time of his arrest, and that various doctors could have testified about petitioner's psychotic episode two years earlier, his panic attacks and antisocial personality disorders dating back at least two years, the psychotic episodes and panic attacks suffered by petitioner after his release on bail, and the effect of petitioner's onset of diabetes. (Id. at 6-7.) Petitioner provides details of his past mental problems, his efforts to obtain treatment for them, and his attempts to persuade counsel to present a psychiatric defense. (Pet., Ex. B, Statement of the Facts at 3-6, 8-9, & Exs. A through P.)

Petitioner also claims that trial counsel failed to investigate witness Judy Daniels and "refused to prepare for her trial testimony and it's [sic] numerous lies." (Pet., Ex. C, Pet'r's Statement of the Facts and Case at 14.) Petitioner claims that trial counsel failed to present an expert witness to show the level of drugs and alcohol in Douglas Hughes' system and prove that Hughes was the aggressor. (Id. at 15.)

In addition, petitioner claims that his appellate counsel provided ineffective assistance by refusing and failing to include on direct appeal the claims petitioner subsequently raised in habeas proceedings. (Pet., Ex. C, Pet. filed in California Supreme Court on Aug. 10, 1998, at 5-6; Pet. filed in California Court of Appeal, Third Appellate District, on July 13, 1998, at 5-6; Pet. filed in Sacramento County Superior Court on Mar. 24, 1998, at 5-6.)

Respondents contend that petitioner's rights to due process were not violated and that he received effective assistance of counsel. Respondents assert that the alleged failure to raise an insanity defense did not arise from a failure of petitioner's first attorney to transmit

information to trial counsel concerning petitioner's mental condition. Respondents point to documentation which shows that petitioner's original attorney provided her file to trial counsel and that trial counsel determined that a mental defense was not warranted. (Answer at 10-11.) Respondents acknowledge that trial counsel has a duty to make a reasonable investigation, but they contend that counsel is not ineffective merely for failure to conduct a more thorough investigation. (Id. at 11.) With regard to mental defenses, respondents note that a defense attorney may rely on the conclusion of his experts in deciding whether to pursue an insanity or diminished capacity defense. (Id. at 12-13.) Respondents argue that the state courts properly denied petitioner's habeas applications because petitioner failed to make a case for counsel's incompetence. (Id. at 11.)

To obtain relief on habeas corpus review for a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel "made errors that a reasonably competent attorney acting as a diligent and conscientious advocate would not have made" and that petitioner was prejudiced by those errors. Butcher v. Marquez, 758 F.2d 373, 375-76 (9th Cir. 1985) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). As the Supreme Court has explained, the petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 688 (1984). After the petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professional, competent assistance. Id. at 690.

"There is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.'" Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689). There is in addition a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689). The petitioner must therefore show

that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The court must "neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight." Campbell v. Wood, 18 F.3d 662, 673 (9th Cir. 1994) (en banc).

After demonstrating that counsel's performance fell below an objective standard of reasonableness, the petitioner must affirmatively prove prejudice. Strickland, 466 U.S. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. See also Williams v. Taylor, 529 U.S. 362, 391-92 (2000); Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).

An attorney's "decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91. The principle of deference to counsel's judgments presupposes that counsel satisfied his "elementary obligation to inquire into both the facts and the law before determining what was in his client's best interest." Sanders v. Ratelle, 21 F.3d 1446, 1456, 1460 (9th Cir. 1994); see also Morris v. California, 966 F.2d 448, 454-55 (9th Cir. 1991).

Habeas relief must be denied where the record demonstrates that defense counsel investigated adequately and rejected a mental defect defense for strategic reasons. See Turk v. White, 116 F.3d 1264, 1266-67 (9th Cir. 1996) (affirming denial of habeas corpus relief on an assistance-of-counsel claim where defense counsel's decision not to pursue an insanity defense was grounded on the reasonable belief that such a defense would have conflicted with a self-

defense theory derived from evidence that the victim initiated the fight), cert. denied, 522 U.S. 1125 (1998); Harris v. Vasquez, 949 F.2d 1497, 1524-25 (9th Cir. 1991) (affirming denial of habeas corpus relief on a claim of ineffective assistance of counsel where defense counsel relied on experts and chose not to present a psychiatric defense theory that could have conflicted with an alibi defense).

The Strickland standards apply to appellate counsel as well as trial counsel. Smith v. Robbins, 528 U.S. 259, 285 (2000); Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F. 2d 1428, 1433 (9th Cir. 1989). However, an indigent defendant does not have "a constitutional right to compel appointed counsel to press nonfrivolous points requested by the [defendant], if counsel, as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751 (1983). If counsel is not allowed to decide what issues are to be pressed, the ability of counsel to present the defendant's case in accord with counsel's professional evaluation would be seriously undermined. Id. See also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th Cir.) (appellate counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is not even particularly good appellate advocacy"), cert. denied, 525 U.S. 929 (1998). There is, of course, no obligation to raise meritless arguments on a client's behalf. Smith v. Robbins, 528 U.S. at 757; Strickland, 466 U.S. at 687-88. Thus, appellate counsel is not deficient for failing to raise a weak issue. Miller, 882 F.2d at 1434. In order to demonstrate prejudice in this context, a petitioner must demonstrate that, but for counsel's errors, he probably would have prevailed on appeal. Miller, 882 F. 2d at 1434 n.9.

The record reflects that both the public defender appointed to represent petitioner and the private attorney subsequently retained by petitioner made reasonable strategic choices in pursuing a theory of self-defense rather than a mental defense. In this regard, petitioner himself alleges that his public defender received a message from a defense psychologist who, after preliminary testing, reported that in his opinion petitioner was neither not guilty by reason of insanity nor unfit to stand trial. (Pet., Ex. B.) In addition, exhibits attached to the petition

indicate that petitioner was to complete that evaluation but failed to keep the appointment scheduled with the psychologist.³ (Id.) Petitioner has also submitted a medical report dictated on January 10, 1995, diagnosing him as suffering from panic disorder and a history of alcohol dependence but also noting his manipulative traits and stating that it is "unknown whether the patient is truthful in his reports, or whether he is being manipulative. (Id.) Given these facts, petitioner has not made an adequate showing that his appointed counsel was ineffective in pursuing a theory of self-defense rather than a mental defense. With respect to his retained trial counsel, petitioner himself alleges that counsel had a "heart felt belief" that petitioner had acted in self-defense and elected to present that defense on his behalf. Plaintiff's own allegations reflect that this was precisely the type of strategic choice that does not constitute ineffective assistance of counsel. Certainly counsel's judgment not to pursue inconsistent theories of defense cannot be seriously questioned. Given these facts it is not surprising that petitioner has also failed to show that his trial would have had a different outcome had counsel elected to pursue a mental defense. Nor has petitioner shown that the outcome of his appeal would have been different had appellate counsel raised claims subsequently presented to the California Supreme Court as habeas claims.

        For all these same reasons petitioner has failed to demonstrate that the performance of his attorneys fell below an objective standard of reasonableness. Petitioner has not shown that counsel's strategic decisions caused their performance to fall outside the wide range of professional, competent assistance or that the outcome of petitioner's trial or appeal would have been different but for the alleged errors. Petitioner is not entitled to federal habeas relief on his claims of denial of due process and ineffective assistance of counsel.

/////

---

³ Petitioner alleges, without further support that his public defender failed to inform him of this follow-up appointment and that he was unaware that the psychologist had accordingly never issued a final report.

12

## II. Prosecutorial Misconduct and Perjured Testimony

Petitioner alleges that he was convicted based on the perjured testimony of Douglas Hughes and his sister, Judy Daniels, "the primary witnesses used at trial by the District Attorney" and both of whom were defendants in pending criminal proceedings at the time of petitioner's trial. (Pet., Ex. C, Pet'r's Statement of the Facts and Case, at 4-5.) Petitioner complains that the prosecutor "chose in the wake of the crime, police statements, hospital reports, investigative reports and preliminary examination testimony to pursue the Petitioner rather than drop her case and prosecute Douglas Hughes as the aggressor." (Id. at 5.) Petitioner theorizes that the prosecutor proceeded against him because he was the last man standing, Douglas Hughes was gravely injured, and petitioner was already charged by the police and in custody. (Id.)

Petitioner points to inconsistencies in statements and testimony given by Hughes and Daniels at various times. He asserts that Hughes was a long time drug user who gave a self-serving account of events and that Daniels was a three-time convicted felon who had a propensity to lie to protect her brother and who also tampered with evidence. (Id. at 4-7, 15.) Petitioner asserts that the prosecutor, before trial, knew that the crime scene and evidence had been "grossly mishandled" and knew about petitioner's psychiatric problems. (Id. at 7-14.) Petitioner claims his conviction was a direct result of Daniels' perjured testimony, which the prosecutor elicited despite the fact that she "knew prior to trial that [Daniels] was a three time convicted felon and that she likely was lying to protect her brother." (Id. at 14.) Petitioner concedes, however, that defense counsel cross-examined and impeached Douglas Hughes on the basis of inconsistencies in his testimony. (Id. at 15-16.)

Respondents contend there was no prosecutorial misconduct or perjured testimony and that petitioner's conviction was based on valid evidence. (Answer at 15-16.) Respondents argue that the state courts' resolution of this issue against petitioner was reasonable, that petitioner failed to lodge objections as to most of his claims of error, and that petitioner has not

13

demonstrated that the result of the trial would have been different if the alleged misconduct had not occurred. (Id. at 15.) Respondents further argue that mere inconsistencies in the testimony of the victim and an eyewitness do not establish knowing use of perjured testimony and do not demonstrate that it was the evidence at trial that was erroneous or false. (Id. at 16.)

A federal habeas petitioner may succeed on a claim of prosecutorial misconduct only on a showing that the conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. Greer v. Miller, 483 U.S. 756, 765 (1987); Darden v. Wainwright, 477 U.S. 168, 181 (1986); Sassounian v. Roe, 230 F.3d 1097, 1106 (9th Cir. 2000); Thompson v. Borg, 74 F.3d 1571, 1576 (9th Cir. 1996). The reviewing court must examine "whether, considered in the context of the entire trial, that conduct appears likely to have affected the jury's discharge of its duty to judge the evidence fairly." United States v. Simtob, 901 F.2d 799, 806 (9th Cir. 1990). Prosecutorial misconduct can be said to violate due process only when it has a substantial and injurious effect or influence in determining the jury's verdict. Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996) (citing O'Neal v. McAninch, 513 U.S. 432, 443 (1995)). It is the petitioner's burden to state facts that point to a real possibility of constitutional error. O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990).

To the extent that prosecution witnesses in this case gave testimony at trial that was inconsistent with testimony at other times, petitioner has not shown that the witnesses committed perjury at trial. Nor has petitioner demonstrated that the prosecutor knew that any testimony given at trial was false. See United States v. Olano, 62 F.3d 1180, 1197 (9th Cir. 1995) (observing that a prosecutor's duty is not to guarantee that a witness will not commit perjury but to refrain from knowingly presenting perjured testimony and from knowingly failing to disclose that testimony used to convict a defendant was false); United States v. Cooper, 173 F.3d 1192, 1203 (9th Cir.) (finding no plain error even if a government witness committed perjury and the government knew of it, since the defendant's attorney was able to impeach the witness with inconsistent statements), cert. denied, 528 U.S. 1019 (1999).

14

Petitioner has failed to allege sufficient facts to establish that the prosecutor elicited perjury or otherwise committed misconduct. There is no evidence in the record that the prosecutor's decision to prosecute petitioner rendered the proceedings fundamentally unfair. Petitioner's allegations of perjured testimony on the basis of mere inconsistencies neither establishes that the testimony was perjured nor demonstrates that, if any testimony was perjured, the prosecutor made knowing use of such testimony. Petitioner is not entitled to relief on his claims of prosecutorial misconduct and use of perjured testimony to obtain a conviction.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 9, 2001.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
bowc1085.157

15

United States District Court
for the
Eastern District of California
October 9, 2001

pc

* * CERTIFICATE OF SERVICE * *

2:99-cv-01085

Bowcock

   v.

Muellar

---

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on October 9, 2001, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.

    Scott M Bowcock                           SH/WBS
    J98496
    FSP                                        MG/DAD
    Folsom State Prison
    P O Box 715071
    Represa, CA  95671-5071

    Anthony L Dicce
    Attorney General's Office
    PO Box 944255
    1300 I Street
    Suite 125
    Sacramento, CA  94244-2550

                                                  Jack L. Wagner, Clerk

                                                  BY:
                                                      Deputy Clerk